IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO.1:15-CR-321-WKW |
| | ) | [WO] |
| MICHAEL DEAN RUTHERFORD | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the court is the Government's Notice of Appeal.  (Doc. # 29.)  Upon consideration of the briefing and the record, the Magistrate Judge's Memorandum Opinion and Order (Doc. # 28) will be reversed.

**I.  STANDARD OF REVIEW**

On appeal to the district court from a magistrate judge's order, the scope of appeal is the same as with an appeal to the circuit court from a district judge's order or judgment.  Fed. R. Crim. P. 58(g)(2)(D).  The appeal of a ruling on a motion to suppress presents a mixed question of fact and law.  *United States v. Barbour*, 70 F.3d 580, 584 (11th Cir. 1995).  The factual findings below are reviewed for clear error.  *Id.*  The application of the law to the facts is reviewed *de novo*.  *Id.*

**II.  BACKGROUND**

This appeal presents the question whether the Magistrate Judge erred in granting Defendant's motion to suppress the results of a breath test.  The procedural history and facts will be briefly discussed.

A.     **Procedural History**

In a one-count Information (Doc. # 1), the Government charged Defendant Michael Dean Rutherford ("Rutherford") with driving while under the influence of alcohol in violation of Alabama Code § 32-5A-191(a)(1) and 18 U.S.C. §§ 7(3) and 13(a).  Rutherford pleaded not guilty.  (*See* Doc. # 9.)  After consenting to proceed to trial before the Magistrate Judge (*see* Doc. # 5), Rutherford filed a motion to suppress the results of a breath test he gave at the police station (Doc. # 19).  The Government filed a response to the motion (Doc. # 26), and Rutherford filed a reply (Doc. # 27).  The Magistrate Judge, deeming the matter submitted on the briefing,[1] granted Rutherford's motion to suppress.  (Doc. # 28.)

The Government timely filed a Notice of Appeal (Doc. # 29), arguing that the Magistrate Judge's Memorandum Opinion and Order (Doc. # 28) should be reversed.  The Government filed a brief in support of its appeal (Doc. # 31), Rutherford filed a responsive brief (Doc. # 32), and the Government filed a reply brief (Doc. # 33).

B.     **Facts**

The events giving rise to this case occurred in the early morning hours of March 20, 2015.  Rutherford was driving his personal vehicle when he approached

---

[1] Though the Magistrate Judge did not hold a hearing on the motion to suppress, the Government represents that the underlying facts are not in dispute. (Doc. # 31, at 16.)

the Daleville access control point at Fort Rucker, which is a United States Army post located within the state of Alabama. When Rutherford reached the access point, the security guard approached his vehicle to check his identification. The security guard detected the odor of alcohol emanating from Rutherford's vehicle and requested police assistance.

Sergeant Willard E. Childress ("Childress"), a member of the Department of the Army Civilian Police, responded to the call and conducted field sobriety tests. Childress determined that Rutherford was likely under the influence of alcohol, placed him under arrest, and transported him to the Fort Rucker police station. Childress did not obtain a search warrant to conduct a breath test to determine Rutherford's blood alcohol level. Upon arriving at the police station, Childress advised Rutherford of the Alabama implied consent law. *See* Ala. Code § 32-5-192. Childress did not advise Rutherford, however, of the federal implied consent law. *See* 18 U.S.C. § 3118. Rutherford then gave a sample of his breath for purposes of testing the alcohol content of his blood. The breath sample showed that Rutherford's blood alcohol level was 0.14 percent.

### III. DISCUSSION

On appeal, the Government contends that the Magistrate Judge erred in suppressing the results of Rutherford's breath test. The Magistrate Judge's findings will be briefly recounted below. Then the application of the Alabama and federal

implied consent statutes will be addressed. The reasonableness of the breath test will next be considered under established Fourth Amendment principles.

A.     **The Magistrate Judge's Findings**

Recognizing the limited scope of the Assimilative Crimes Act, 18 U.S.C. § 13(a), the Magistrate Judge found that the federal implied consent statute, and not the Alabama implied consent statute, applied in the context of Rutherford's arrest. Following the rationale of *United States v. Rogers*, 926 F. Supp. 1000 (D. Colo. 1992), the Magistrate Judge then concluded that Rutherford had a right to refuse a breath test under the federal implied consent statute.

Because a breath test is a Fourth Amendment search, *see Skinner v. Ry. Labor Execs. Ass'n*, 489 U.S. 602, 616–617 (1989), the Magistrate Judge proceeded to determine whether Childress's administration of the test comported with constitutional principles. There was no warrant authorizing the breath test, and the Magistrate Judge found that it fell under neither the search incident to arrest exception nor the consent exception to the Fourth Amendment's warrant requirement. Finally, applying the exclusionary rule, the Magistrate Judge granted Rutherford's motion to suppress the results of the breath test.[2]

---

[2] In addition to making findings relevant to the Fourth Amendment's proscription of unreasonable searches and seizures, the Magistrate Judge briefly addressed the Fifth Amendment concerns that arise from forcing a defendant to submit to a breath test. The Magistrate Judge agreed with the Government's position that forced submission to a breath test does not violate a defendant's privilege against self-incrimination. *See South Dakota v. Neville*, 459 U.S. 553, 564 (1983). Though the Government relies indirectly on some Fifth Amendment theories in support

4

**B.     The Federal Implied Consent Statute as Applied to Rutherford's Arrest**

The Government agrees with the Magistrate Judge's finding that the federal implied consent statute applied to Rutherford's arrest. For the sake of clarity, the relevant statutory schemes will be discussed.

Driving under the influence of alcohol within the special maritime and territorial jurisdiction of the United States is not directly actionable under the federal criminal code. Instead, Congress authorized the prosecution of drunk driving offenses indirectly by operation of the Assimilative Crimes Act. 18 U.S.C. § 13. That statute provides that, where conduct taking place within the special maritime and territorial jurisdiction of the United States is not otherwise punishable under federal law, and where such conduct would constitute a crime under the laws of the state in which the federal territory is located, it is punishable as a criminal offense under federal law. *Id. See* 18 U.S.C. § 7 (defining the special maritime and territorial jurisdiction of the United States). The Assimilative Crimes Act thus fills the gaps in the federal criminal code, incorporating state criminal provisions so long as they do not conflict with any directly applicable federal enactment. *See United States v. Hapney*, No. CR208-10, 2008 WL 4224804, at *3 (S.D. Ga. Sept. 11, 2008).

---

of its position on appeal, neither party argues generally that Rutherford's breath test raises a Fifth Amendment issue.

Pursuant to Alabama's criminal code, any person who operates a motor vehicle while there is 0.08 percent or more of alcohol in his blood is guilty of driving under the influence of alcohol.  *See* Ala. Code § 32-5A-191.  A person's initial violation of this provision is punishable by imprisonment for not more than one year or a fine ranging from $600 to $2,100.  Ala. Code § 32-5A-191(e).  Subsequent convictions may result in greater penalties.  Ala. Code § 32-5A-191(f)–(h). Pursuant to the Assimilative Crimes Act, operation of a motor vehicle on a federal installation within Alabama is punishable under the terms of the Alabama drunk driving law. *See* 18 U.S.C. §§ 7 and 13.

The scope of the Assimilative Crimes Act is limited.  A state criminal provision is only assimilated to the extent that it sets out the elements of the offense and the nature of the appropriate punishment.  *United States v. Garner*, 874 F.2d 1510, 1512 (11th Cir. 1989).  Those portions of state criminal statutes that are merely procedural or regulatory are not assimilated.  *United States v. Roberts*, 845 F.2d 226, 228–29 (9th Cir. 1988).  The laws of most states,[3] including those of Alabama, provide that a driver, by operating a motor vehicle on public roads within the state,

---

[3] Some states, including North Dakota and Minnesota, go further than merely imposing civil penalties for refusal to submit to a breath test, making such refusal a criminal offense.  The Supreme Court recently decided a series of cases challenging these criminal refusal laws. *Birchfield v. North Dakota*, 579 U.S. ___ (2016).  Though the issues raised in those cases differ slightly from the questions at bar, the Court's decision in *Birchfield* is ultimately dispositive of this appeal. *See* Part IV.C.2, *infra*.

6

is deemed to have given consent to a chemical test of his blood alcohol content. *See* Ala. Code § 32-5-192. These implied consent provisions are considered procedural and regulatory, and thus are not incorporated into federal law under the Assimilative Crimes Act. *See, e.g., Roberts*, 845 F.2d at 228. Accordingly, there are parallel state and federal implied consent statutes.

Under the Alabama implied consent statute, any person operating a motor vehicle on a public highway of the state is considered to have consented to a chemical test of his breath to determine the alcohol content of his blood.[4] Ala. Code § 32-5-192(a). Law enforcement officers must warn drivers that failure to submit to a breath test may result in outright suspension of their driving privileges for ninety days. *Id.* The Alabama statute further provides that when a driver refuses to submit to a breath test, no such test will be administered. Ala. Code § 32-5-192(b). If the driver refuses, the law enforcement officer must notify the Director of Public Safety, who then must suspend the person's driver's license. *Id.*

Though the federal implied consent statute is structurally similar to the Alabama analogue, it differs in a few specific respects. By its terms, the federal statute only applies where a person operates a motor vehicle within the "special maritime and territorial jurisdiction of the United States." 18 U.S.C. § 3118(a). Like

---

[4] Both the Alabama and federal implied consent laws contemplate other means of testing the driver's blood alcohol content, including blood draws and urinalysis.

the Alabama law, the federal implied consent statute provides that persons operating motor vehicles on federal enclaves are deemed to have given their consent to a chemical test of their breath if arrested on suspicion of driving under the influence. *Id.* Law enforcement officers also must warn drivers of the consequences of refusing to submit to a test under the federal statute, but the consequences differ significantly from those provided in the Alabama statute. 18 U.S.C. § 3118(b). Refusal to submit to a breath test under the federal implied consent statute results in deprivation of the right to operate a motor vehicle on federal lands for a period of one year. The federal statute does not provide for outright suspension of the person's driver's license. *See id.*

Both the Government and Rutherford agree that Childress stopped, arrested, and detained Rutherford on federal property. Because this activity took place within the special maritime and territorial jurisdiction of the United States, and because the Assimilative Crimes Act does not encompass procedural or regulatory provisions, the Alabama implied consent law did not govern Rutherford's arrest.[5] The Magistrate Judge correctly found that the federal implied consent statute applied.

---

[5] The Government also argues, in relation to a separate issue on appeal, that Alabama nonetheless may have been authorized to suspend Rutherford's license based on his conduct at the Fort Rucker access point. The Government makes this point after conceding that the federal implied consent statute applied during the investigation of Rutherford's suspected offense.

Whether Alabama could have taken parallel action based on Rutherford's conduct at the Daleville gate would be relevant, as a separate matter, to whether Childress coerced Rutherford into submitting to a breath test. But because the breath test to which Rutherford submitted is a

C.  **Fourth Amendment Analysis**

The Magistrate Judge suppressed the results of Rutherford's breath test as an unreasonable search and seizure. The Fourth Amendment holds that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend IV. The guiding principle in any Fourth Amendment challenge is reasonableness. Though a warrant is not a *sine qua non* of reasonableness, it is necessary in the majority of scenarios. *See Riley v. California*, 134 S. Ct. 2473, 2482 (2015) ("In the absence of a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement.").

It is clear that the breath test constitutes a search for Fourth Amendment purposes. But under the Supreme Court's decision in *Birchfield v. North Dakota*, a warrantless breath test is a reasonable search for Fourth Amendment purposes. 579 U.S. ___ (2016). Accordingly, the results of Rutherford's breath test should not be excluded from the evidence.

1.  *The Breath Test Was a Fourth Amendment Search.*

The examination of a person's blood alcohol content by means of a breath test constitutes a search within the meaning of the Fourth Amendment. Breath tests

---

reasonable warrantless search under the search incident to arrest doctrine, the issue of consent need not be addressed.

require the subject to produce "alveolar or deep lung breath for chemical analysis." *Skinner*, 489 U.S. at 616 (internal quotation marks omitted). These chemical breath analyses, as with blood tests, implicate the driver's concerns about his own bodily integrity and constitute an intrusion into the driver's person. *See id.* at 616–17. The Magistrate Judge was correct, and the Government concedes, that the breath test to which Rutherford submitted was a Fourth Amendment search.

That the breath test is a search within the meaning of the Fourth Amendment merely signals the beginning of this constitutional inquiry. The hallmark of the Fourth Amendment is reasonableness. U.S. Const. amend. IV; *Skinner*, 489 U.S. at 619. And where a search falls within an exception to the Fourth Amendment's strong preference for a warrant, it is considered reasonable. These exceptions to the general warrant requirement include special needs scenarios, exigent circumstances, searches incident to arrest, and consent searches. Because Rutherford's breath test qualifies as a search incident to arrest, it was reasonable despite having been conducted without a warrant.

    2.    ***The Breath Test Was Excepted from the Warrant Requirement as a Search Incident to Arrest.***

Under the search incident to arrest doctrine, a law enforcement officer may conduct a warrantless search of an arrestee's person and the area within the arrestee's immediate control without running afoul of the Fourth Amendment's reasonableness

requirement. *Chimel v. California*, 395 U.S. 752, 763 (1969). This exception to the Fourth Amendment's strong preference for a warrant applies categorically and does not depend upon a *post hoc* evaluation of the likelihood that weapons or evidence would be found in connection with each particular search. *United States v. Robinson*, 414 U.S. 218, 235 (1973). Where this categorical rule is applied to situations that have not yet been recognized as falling within the search incident to arrest doctrine, courts should balance the degree to which the search intrudes upon the arrestee's privacy against the degree to which the search is necessary for the promotion of legitimate governmental interests. *Riley v. California*, 134 S. Ct. 2473, 2484 (2014).

Applying this balancing test in the context of breath alcohol tests, the Supreme Court held in *Birchfield* that the Fourth Amendment permits warrantless breath alcohol tests as searches incident to arrests for drunk driving.[6] 579 U.S. at ___ (slip op., at 33). It follows that the breath test Childress administered in connection with Rutherford's arrest for drunk driving was reasonable under the Fourth Amendment as a search incident to arrest. Because the search was reasonable regardless of whether Rutherford gave free and voluntary consent, it is immaterial that Childress

---

[6] The Court noted that blood tests implicate more significant privacy concerns, and accordingly held that they are not exempt from the warrant requirement as searches incident to arrest. *Birchfield*, 579 U.S. at ___ (slip op., at 35).

11

advised Rutherford under the Alabama implied consent law rather than its federal counterpart.

It being clear that warrantless breath alcohol tests are reasonable under the Fourth Amendment, there is no cause for suppressing the evidence associated with Rutherford's breath test. The exclusionary rule only forbids the use of improperly obtained evidence. *See Herring v. United States*, 555 U.S. 135, 139 (2009). The breath test at issue was not an unreasonable search or seizure, and the evidence associated with it is admissible at trial. In light of the rule in *Birchfield*, Rutherford's motion to suppress must be denied.

## IV.  CONCLUSION

Accordingly, it is ORDERED that the Magistrate Judge's Memorandum Opinion and Order (Doc. # 28) is REVERSED. It is further ORDERED that this case is REMANDED to the Magistrate Judge for further proceedings not inconsistent with this memorandum opinion and order.

DONE this 30th day of June, 2016.

                                        /s/ W. Keith Watkins
                                CHIEF UNITED STATES DISTRICT JUDGE