IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Case No.: 1:15-CR-321-WC |
| | ) |
| MICHAEL DEAN RUTHERFORD | ) |

**MEMORANDUM OPINION AND ORDER**

Before the court is Defendant's "Motion to Suppress" (Doc. 38), wherein Defendant seeks an order suppressing all evidence of intoxication, including results of field sobriety and breath tests, resulting from a driving-under-the-influence ("DUI") investigation that took place at the United States Army post at Fort Rucker. Def.'s Mot. (Doc. 38) at 1. The Government responded (Doc. 40) to Defendant's motion, and Defendant replied (Doc. 41). On August, 4, 2016, the undersigned Magistrate Judge held an evidentiary hearing on the motion. *See* Doc. 45. Upon consideration of Defendant's motion, the Government's response, and the evidence and testimony adduced at the evidentiary hearing, Defendant's motion to suppress is due to be denied.

**I.     FINDINGS OF FACT[1]**

The facts of this case are undisputed. At approximately 2:30 a.m. on March 20, 2015, Defendant Michael Dean Rutherford ("Defendant"), along with a passenger in his

---

[1] The Court reaches findings of fact at a suppression hearing based on a preponderance of the evidence. *United States v. Beechum*, 582 F.2d 898, 913 n.16 (5th Cir. 1978) (citing *Lego v. Twomey*, 404 U.S. 477, 489 (1972)).

vehicle, were returning to Fort Rucker when they were stopped at the Daleville access control point ("ACP") by Officer Jan Albert Johnson, Jr. ("Officer Johnson").[2]  Tr. 8:19-9:8.  Pursuant to base policy, individuals entering the facility, including soldiers, must present identification and sign-in any passengers in their vehicles.  Tr. 6:1-13.  During the stop of Defendant's vehicle, Defendant rolled down his car window, handed Officer Johnson his identification, and stated that he needed to sign-in his passenger.  Tr. 11:2-12.  As Defendant was speaking, Officer Johnson smelled alcohol.  Tr. 9:1-8.  He asked Defendant to pull his car over to the right lane.  Tr. 13:4-8.  Officer Johnson notified his coworker, Lieutenant Monroe, that he smelled alcohol coming from the vehicle.  Tr. 12:19-13:8.  Lieutenant Monroe spoke with Defendant and determined that he, too, smelled alcohol.  Tr. 13:4-8.  Officer Johnson and Lieutenant Monroe informed Lieutenant James that there was a possible DUI at the Daleville gate.  Tr. 13:9-14.  Defendant was subsequently administered a field sobriety test and breathalyzer by responding military police officers.  *Id.*

## II.  DEFENDANT'S ARGUMENT

Defendant moves the court for "an Order suppressing all evidence of intoxication, including results of field sobriety and breath tests, resulting from the unlawful seizure for investigation of DUI based solely on an odor of alcohol detected during an administrative seizure at an access control point on Fort Rucker."  Def.'s Mot. (Doc. 38) at 1.  Defendant

---

[2] Officer Johnson worked for two-and-a-half years as an Army security guard at Fort Rucker.  Tr. (Doc. 45) 4:1-17.  His job responsibilities entailed post protection and determining whether or not drivers attempting to enter Fort Rucker could be allowed access.  *Id.*  At the suppression hearing, Officer Johnson testified that he has previously been in the company of people who were intoxicated, and he is familiar with the smell of alcohol.  Tr. 11:20-12:5.

argues that "[n]o reasonable person could have concluded, based on the 'scent' of alcohol alone and no other indicia of possible impairment, that reasonable suspicion existed to support expanding the checkpoint encounter into an investigatory detention for DUI." *Id.* at 6. Defendant does not challenge the validity of the initial, administrative stop at the Daleville gate. Instead, he argues that without other indicia of intoxication—glassy or bloodshot eyes, confusion, loss of equilibrium, slurred speech, or erratic driving—the smell of alcohol alone did not rise to the level of reasonable suspicion needed for Officer Johnson to expand the stop into an investigatory detention. *Id.*

### III.  DISCUSSION

The Fourth Amendment to the United States Constitution guarantees the right of individuals "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizure." U.S. Const. amend. IV. Limited Fourth Amendment scrutiny is applied to what have come to be known as *Terry* stops, which are investigative stops short of arrests. *Terry v. Ohio*, 392 U.S. 1, 30 (1968). This limited scrutiny requires only a reasonable suspicion of criminal wrongdoing for an officer to extend an otherwise lawful stop to briefly detain an individual and investigate further criminal activity. *Id.* Reasonable suspicion demands "considerably less" than probable cause, but "police are required to articulate some minimal, objective justification for the stop." *United States v. Mikell*, 102 F.3d 470, 475 (11th Cir. 1996). "Reasonable, articulable suspicion must be drawn from specific facts, and rational inferences therefrom, measured under the totality of the circumstances and in light of the officer's knowledge." *United States v. Packer*, 375 F.

App'x 976, 978 (11th Cir. 2010). "Great deference is given to the judgment of trained law enforcement officers on the scene." *Id.* at 979.

Here, the court finds there was the reasonable, articulable suspicion—based upon the scent of alcohol—required to briefly detain Defendant in order to further investigate him for DUI. At the hearing, Officer Johnson testified that he perceived a "strong odor" of alcohol immediately after Defendant began to speak.[3] Tr. 12:3-8. Officer Johnson testified that his coworker, Lieutenant Monroe, also smelled alcohol. Tr. 13:4-8. The smell of alcohol, detected on the breath of a driver by a trained law enforcement officer, provides evidence sufficient to establish a reasonable suspicion that the driver is under the influence of alcohol with or without other indicia of intoxication.[4] Many courts have reached this conclusion. *See Miller v. Harget,* 458 F.3d 1251, 1259–60 (11th Cir. 2006) ("Therefore, when Officer Harget smelled alcohol coming from the vehicle Mr. Miller had been driving, he had reasonable suspicion to detain Mr. Miller in order to investigate.")[5]; *see also United States v. Ivey,* 307 F. App'x 941, 942 (6th Cir. 2009) (holding that smell of alcohol emanating from the defendant provided the requisite suspicion to justify continued

---

[3] On cross-examination, Officer Johnson restated that he smelled a "strong odor" of alcohol although his report of the incident made shortly thereafter states that he got a "scent" of alcohol. Tr. 19:18-20:11.

[4] In support of his contrary position, Defendant cites *United States v. Santiago*, 846 F. Supp. 1486, 1494 (D. Wyo. 1994). Relying on *Santiago*, Defendant asserts that in order to meet the requirements of reasonable suspicion, an officer must witness multiple indicia of impairment. Def.'s Mot. (Doc. 38) at 6. While the *Santiago* court considered additional factors that pointed to Santiago's possible intoxication above and beyond the scent of alcohol, that court did not find that multiple indicators of intoxication must be present for an officer to find reasonable suspicion.

[5] The court notes that, in addition to smelling alcohol, the officer observed the driver's eyes were bloodshot and glassy, and that there was a white, non-translucent cup in the cup-holder nearest to the driver. *Miller*, 458 F.3d at 1253.

detention under *Terry*)[6]; *United States v. Ramos*, 443 F.3d 304, 309 n.8 (3d Cir. 2006) (analogizing odor of marijuana to alcohol and remarking that smelling either required officers to investigate further to ensure that the drivers of the vehicles were not impaired); *United States v. Neumann,* 183 F.3d 753, 756 (8th Cir. 1999) (detection of alcohol on driver's breath provided a highway patrol officer with reasonable suspicion to further investigate the driver and expand the scope of his original detention)[7]; *State v. Gauthier*, 756 S.E. 2d 705, 708 (Ga. Ct. App. 2014) (the smell of alcohol provided the officer reasonable grounds to conduct a second-tier investigatory detention)[8]; *Peterson v. State*, 668 S.E. 2d 544, 546 (Ga. App. 2008) ("When the second officer arrived and smelled alcohol, police obtained sufficiently reasonable and articulable suspicion to administer field sobriety and alco-sensor tests.")[9]; *Whitmore v. State*, 657 S.E. 2d 1, 3 (Ga. Ct. App. 2008) ("The alcoholic smell [alone] provided the officer reasonable grounds to conduct a second-tier investigatory detention."); *Nickelson v. Kansas Dep't. of Revenue*, 102 P.3d 490, 496 (Kan. Ct. App. 2004) (trooper had grounds to detain a driver for further investigation after the trooper immediately smelled alcohol coming from the vehicle).

---

[6] The court notes that the initial encounter between the defendant and the officer involved the officer pulling up behind the defendant's parked car and arousing the defendant from his sleep. *Ivey*, 307 F. App'x at 942.

[7] The court notes that prior to smelling a "faint odor of alcohol" on the defendant's breath, the officer noted that the defendant appeared nervous, and had lit a cigarette after pulling over. *Neumann*, 183 F.3d at 757.

[8] The court notes that the second officer to arrive on the scene also noted that the defendant's eyes were bloodshot and watery. *Gauthier*, 756 S.E. 2d at 707.

[9] The court notes that the first officer on the scene, who had an incapacity to smell, noted the defendant's bloodshot and watery eyes, unusual demeanor, and traffic violations. However, that court noted that "[t]he first officer's incapacity to smell meant that critical evidence concerning any further DUI investigation was missing," which was rectified by the second officer's detection of the smell of alcohol. *Petersen*, 668 S.E. 2d at 546.

To the extent that the aforementioned cases included other indicia of alcohol use by the defendants—*i.e.,* bloodshot or watery eyes, nervousness, unusual demeanor, *etc.*—to establish reasonable suspicion to further investigate, the undersigned concludes that those officers would have had reasonable suspicion based upon the scent of alcohol alone. To conclude otherwise would be problematic. Carried to its logical conclusion, Defendant's argument that there must be other indicia of intoxication, apart from the scent of alcohol on a driver's breath, in order to justify a brief investigatory detention would lead to undesirable results. First, as this case appears to establish, a person may be legally intoxicated while not exhibiting behaviors consistent with greater impairment. Second, while it is true that in theory a person may legally drink and then drive, it is unreasonable to expect a law enforcement officer who smells alcohol on the breath of a driver to be able to discern whether the scent is sufficiently scant that the officer should not be concerned that there is an impermissible amount of alcohol in the driver's blood. The more sensible and practical rule is that, as in this case, the scent of alcohol on the breath of a driver establishes reasonable suspicion that the driver may be under the influence of alcohol and therefore justifies a brief investigatory detention of the driver.

Thus, the court concludes that Officer Johnson had reasonable, articulable suspicion to detain and further investigate Defendant for DUI based upon the odor of alcohol emanating from Defendant's breath and/or vehicle. Indeed, the smell of alcohol provided a particularized and objective basis for suspecting that Defendant was driving under the influence of alcohol. As such, the investigatory stop executed by Officer Johnson comports with the requirements of *Terry* and does not violate the Fourth Amendment. As such,

Defendant is not entitled to suppression of the results of subsequent field sobriety testing or breathalyzer results.

## III.  CONCLUSION

For all of the foregoing reasons, the Defendant's motion (Doc. 38) is DENIED.

Done this 22nd day of September, 2016.

                    /s/ Wallace Capel, Jr.
                    UNITED STATES MAGISTRATE JUDGE